582 S.E.2d 871

**In re: KYIAH P. and Joseph P.**

**No. 30971.**

Supreme Court of Appeals of
West Virginia.

Submitted April 9, 2003.

Decided May 21, 2003.

Concurring Opinion of Chief Justice
Starcher July 9, 2003.

Pat Lamp, Esq., Beckley, Guardian ad Litem.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, Angela A. Ash, Esq., Assistant Attorney General, Beckley, for WV DH & HR.

Paul W. Roop, II, Esq., Roop, Smith & Roop, PLLC, Beckley, for Alvin P.

David A. Kirkpatrick, Esq., Kirkpatrick Law Office, Beckley, for Stacy P.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Raleigh County entered on August 29, 2002. Pursuant to that order, the abuse and neglect petition brought against the appellees, Alvin and Stacy P.,[1] concerning their two children, Kyiah and Joseph P., was dismissed.[2] In this appeal, the appellants, the guardian ad litem on behalf of the children and the Department of Health and Human Resources ("DHHR"), contend that the circuit court erred by dismissing the petition.

This Court has before it the petition for appeal, the entire record, and briefs and argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded for further proceedings consistent with this opinion.

## I.

## FACTS

On April 15, 2002, Alvin P. contacted the DHHR and requested diapers for his son, Joseph. According to the DHHR, it was evident from the phone call that there was stress in the home and, thus, a referral for services was made. On April 25, 2002, a DHHR social worker met with the family which included Alvin P., his wife, Stacy P., and their two children, Kyiah P., who was born on December 24, 2000, and Joseph P., who was born on December 24, 2001. During the meeting, Stacy P. told the social

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The circuit court stayed dismissal of the case for sixty days. By order dated October 28, 2002, this Court continued the stay of the dismissal of the case pending the resolution of this appeal.

worker that she had four other children removed from her custody by child protective services in Virginia.

Thereafter, the DHHR contacted Amy Whitt of child protective services in Campbell County, Virginia. The DHHR was advised by Ms. Whitt that eight children had been removed from Stacy P. and her parental rights to those children terminated. Ms. Whitt also said that Alvin P. had sexually abused his four-year-old daughter, Samantha P.[3] Ms. Whitt indicated that any children in the custody of Alvin and Stacy P. would be in imminent danger.

Based on this information, the DHHR filed an application for emergency custody of Kyiah and Joseph P. on April 26, 2002. Consequently, the children were immediately removed from their parents' custody. A formal abuse and neglect petition filed by the DHHR on May 1, 2002, asserted that Kyiah and Joseph P. were at risk for abuse and neglect because of the involuntary termination of Stacy and Alvin P.'s parental rights to their other children in Virginia.

A preliminary hearing was held on May 15, 2002. Apparently, child protective service workers from Virginia testified that the parental rights of Alvin and Stacy P. to their other children were not involuntarily terminated.[4] However, they did state that Stacy P. voluntarily terminated her parental rights to two of her other children. Also, they indicated that Alvin P. had sexually abused his daughter, Samantha P. Thereafter, the court ordered that legal custody of the children remain with the DHHR, but afforded the DHHR discretion with regard to the physical custody of the children.

Subsequently, the DHHR returned the children to the home of Stacy P. However, Alvin P. was permanently restrained and enjoined from having contact with the children except for supervised visitation.[5] An adjudicatory hearing was scheduled for August 6, 2002. At that hearing, the DHHR sought

and received a continuance in order to travel to Virginia to investigate the allegations of sexual abuse against Alvin P.

The adjudicatory hearing was rescheduled for August 28, 2002. Although the DHHR had subpoenaed case workers from Virginia to testify, they refused to appear contending that they did not have sufficient notice. The DHHR sought another continuance, but the circuit court denied the motion. The court then dismissed the abuse and neglect petition by order entered on August 29, 2002. This appeal followed.

## II.

## STANDARD OF REVIEW

We begin our analysis of this case by setting forth our standard of review. We recently stated that, "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice,* we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily,* 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). This Court has also held that:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

**3.** Stacy P. is not the biological mother of Samantha P.

**4.** Transcripts of the hearings held in this case were not included in the record presented to this Court in connection with this appeal. As a result, we are unable to ascertain the exact content of

the testimony presented during the preliminary hearing.

**5.** It appears that Alvin P. agreed to move out of the home so the children could be returned to Stacy P.

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). With these standards in mind, we proceed to determine whether the circuit court erred in this case.

## III.

## DISCUSSION

■ The sole issue in this case is whether the circuit court erred by dismissing the abuse and neglect petition filed against Alvin and Stacy P. The appellants argue that the dismissal was improper absent a full evidentiary hearing. In support of their argument, the appellants rely upon this Court's holdings in *In the Matter of George Glen B., Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999) ("*George I*"). In Syllabus Point 2 of *George I*, this Court held that:

> Where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present.

Also, in Syllabus Point 4 of *George I*, this Court stated that:

> When an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § 49-6-5b(a)(3) (1998), prior to the lower court's making any disposition regarding

the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

The appellants acknowledge that through further investigation, they learned that the appellees' parental rights to their other children were never involuntarily terminated. However, they contend that the holdings of *George I* should nevertheless be applied in this case because child protective services in Virginia had sufficient evidence to terminate the appellees' parental rights to their other children. Stacy P.'s parental rights were not terminated only because she agreed to voluntarily relinquish her rights. Similarly, Alvin P.'s parental rights to Samantha P. were not terminated, but he was denied visitation with her after Virginia child protective services determined that he sexually abused her. Based on these facts, the appellants argue that the circuit court should have held an adjudicatory hearing and allowed them to present evidence concerning the abuse and neglect proceedings that were conducted in Virginia. The appellants maintain that there was good cause for a continuance of the adjudicatory hearing based on the failure of the Virginia social workers to appear to testify.

■ In response, the appellees argue that the abuse and neglect petition was properly dismissed because the appellants were unable to produce any evidence of a prior involuntary termination of their parental rights. The appellees contend that W.Va.Code § 49-6-5b (1998) only applies where a parent's parental rights have been involuntarily terminated. They further assert that the appellants did not have good cause for a continuance of the adjudicatory hearing. In that regard, the appellees note that the circuit court granted one continuance before dismissing the petition. The appellees say that even with an additional three weeks to secure their witnesses, the appellants were not able to do so. Thus, the appellees conclude that the circuit court's dismissal of the petition should be affirmed.

It is well established that W.Va.Code § 49–6–5b requires the DHHR to join efforts to terminate parental rights where "the parental rights of the parent to a sibling have been terminated involuntarily." In *George I*, we explained that,

> Quite clearly, the statute contemplates that a prior termination of parental rights to a sibling is, at least, some evidence of a child being threatened with abuse and neglect. The legislature has clearly determined that where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49–6–1 to –12 (1998).

205 W.Va. at 442, 518 S.E.2d at 870. In addition, in Syllabus Point 1 of *In re George Glen B., Jr.*, 207 W.Va. 346, 532 S.E.2d 64 (2000) (*"George II"*), this Court held that:

> When the parental rights of a parent to a child have been involuntarily terminated, *W.Va.Code*, 49–6–5b(a)(3) [1998] requires the Department of Health and Human Resources to file a petition, to join in a petition, or to otherwise seek a ruling in any pending proceeding, to terminate parental rights as to any sibling(s) of that child.

It is clear from the record that the DHHR filed the abuse and neglect petition in this case based upon the belief that the appellees had their parental rights to as many as eight other children terminated. However, upon further investigation, the DHHR learned that the appellees' parental rights to their other children were never involuntarily terminated. Yet, the DHHR did confirm that abuse and neglect proceedings had been instituted by child protective services in Virginia against the appellees. Furthermore, the DHHR discovered that Stacy P. agreed to

voluntary relinquish her parental rights to two of her other children once she learned that child protective services had instituted termination proceedings. Also, the DHHR discovered that child protective services in Virginia had determined that Alvin P. sexually abused his daughter, Samantha P. Instead of contesting that finding, Alvin P. agreed to no longer visit Samantha P.[6]

Based on these facts, the DHHR sought a continuance of the adjudicatory hearing to gather more evidence including the testimony of the Virginia child protective service workers. The circuit court granted the DHHR's motion, but when a second continuance was requested, the motion was denied. Thereafter, the circuit court dismissed the petition because the DHHR was unable to produce any additional evidence of abuse and neglect of the children. Having reviewed the entire record, we agree with the appellants that the circuit court abused its discretion by dismissing the abuse and neglect petition at this juncture.

While the appellees' parental rights to their other children have not been involuntarily terminated, it is clear from the record that substantial allegations of abuse of neglect by these parents were made in the state of Virginia with respect to their other children.[7] As we stated previously, these allegations resulted in the voluntary termination of Stacy P.'s parental rights to two of her other children. Also, Alvin P. was denied further visitation with his daughter, Samantha P. because he sexually abused her.

The appellees maintain that the abuse and neglect petition should have been dismissed once it was established that their parental rights to their other children were never involuntarily terminated. We disagree. Recently, in *In re James G.*, 211 W.Va. 339, 566 S.E.2d 226 (2002), we considered the effect of a voluntary versus involuntary termination of parental rights on later-born children. In that case, the appellant mother argued that the circuit court had erred by refusing to

---

6. The DHHR was also advised that at some point during the proceedings involving Samantha P. in Virginia, Stacy P. told child protective services that Alvin P. did sexually abuse Samantha P.

7. The record suggests that the proceedings in Virginia were never completed because the appellees moved to West Virginia.

accept her voluntarily relinquishment of parental rights. The DHHR would not agree to the voluntary termination suggesting that the mother only offered to relinquish her parental rights because she knew they were going to be terminated, and she wanted to limit the DHHR's ability to take action against her should she later have another child. Ultimately, this Court determined that "[a] circuit court has discretion in an abuse and neglect proceeding to accept a proffered voluntary termination of parental rights, or to reject it and proceed to a decision on involuntary termination." Syllabus Point 4, in part, *id.* However,

> [w]e note[d] that while W:Va.Code § 49–6–5b (1998) does not include the voluntary termination of parental rights as one of the factors triggering a new petition against a parent with additional children, the *absence* of one of these factors does not in any way prevent the Department from filing such a petition should conditions warrant. Nothing prevents the Department from conducting an investigation if it believes that a parent who has voluntarily terminated parental rights with respect to one child might be mistreating another child, or from providing such a parent with assistance or counseling where available.

*Id.,* 211 W.Va. at 346, 566 S.E.2d at 233.

In the case *sub judice,* we find that the conditions warranted the filing of the abuse and neglect petition. Furthermore, based upon the preliminary hearing testimony, there was probable cause for the emergency removal of the children from their home. While the appellees' parental rights to their other children were never involuntarily terminated, there was reason to believe that the appellees might be mistreating Kyiah and Joseph P. Given that possibility, an adjudicatory hearing was required. As this Court has stated on many occasions,

> The guiding principle in any child abuse or neglect proceeding is to do what is best for the child: "First and foremost in a contest involving the custody of a child is the consideration of that child's welfare. It has been held repeatedly by this Court that the welfare of the child is the polar star by which the discretion of the court

will be guided." *State ex rel. Cash v. Lively,* 155 W.Va. 801, 804, 187 S.E.2d 601, 604 (1972); *accord, Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989); *State ex rel. Rose L. v. Pancake,* 209 W.Va. 188, 192, 544 S.E.2d 403, 407 (2001) (Davis, J. concurring).

*Id.,* 211 W.Va. at 345, 566 S.E.2d at 232.

Consequently, we find that the circuit court erred when it dismissed the abuse and neglect petition without conducting the adjudicatory hearing. While we recognize that the DHHR had a significant amount of time during which to secure its witnesses for the adjudicatory hearing, we, nonetheless, believe it established good cause for a second continuance. In summary, based on all of the above, especially the need to protect the welfare of these children, the circuit court should have rescheduled the adjudicatory hearing and allowed the DHHR and guardian ad litem to present the testimony of the child protective service workers from Virginia.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Raleigh County entered on August 29, 2002, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

STARCHER, C.J., concurring:

(Filed July 9, 2003)

I concur in the Court's opinion. I write separately to comment on the circuit judge's decision not to grant the DHHR a second continuance.

Courts are busy forums, in which litigants who fail to bring evidence forward in a timely fashion risk having their cases dismissed. If there is no risk of sanctions for delay, there is a correlative tendency for no one to take deadlines seriously. And especially in priority child abuse cases, the court is on a strict timetable.

**430**

In the instant case, the DHHR should have known what the Virginia authorities' position was well before the August 28 hearing, and should have asked for second continuance. Just "showing up" and saying "Sorry, Judge, we're not ready" is not acceptable. For this reason, the circuit court's action was, it appears, entirely understandable.