# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **P.W.**

**No. 15-0255** (Randolph County 14-JA-14)

November 23, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners, Mother B.B. and Father D.W. Jr., by counsel Christopher W. Cooper and Gregory R. Tingler, jointly appeal the Circuit Court of Randolph County's February 11, 2015, order terminating their parental rights to P.W. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. On appeal, petitioners allege that the circuit court erred in failing to give adequate consideration to the testimony from Petitioner Father's prior victim, M.T., in treating this matter as an aggravated circumstances case, and in shifting the burden of proof to petitioners.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2014, Petitioner Mother gave birth to her third child, P.W. The child's biological father is Petitioner Father. According to the DHHR's petition, the child exhibited signs of exposure to controlled substances upon birth. Further, in 2012, Petitioner Mother's parental rights to her two older children were involuntarily terminated because of her drug abuse and issues of domestic violence. In 2004, Petitioner Father's custodial rights to his step-daughter, M.T., were involuntarily terminated upon a finding that he sexually abused her. In August of 2014, the DHHR filed an abuse and neglect petition against petitioners and alleged abuse and neglect as to P.W. due to the prior involuntary terminations of their parental and custodial rights. That same month, the circuit court held a preliminary hearing wherein certified copies of the pertinent dispositional orders from the prior proceedings were entered into evidence.

---

[1]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. Further, although they appeal jointly, petitioners raise no assignment of error regarding any findings of fact or conclusions of law in regard to Petitioner Mother.

In September of 2014, the circuit court held an adjudicatory hearing to allow for the development of evidence surrounding the prior involuntary terminations and what actions, if any, petitioners had taken to remedy the circumstances of abuse or neglect. Ultimately, the circuit court found that Petitioner Mother failed to remedy her substance abuse issues that led to the prior involuntary termination of parental rights. Further, the circuit court found that Petitioner Mother placed the child at risk by continuing her relationship with Petitioner Father despite her knowledge that he was previously found to have sexually abused his step-daughter.

As to Petitioner Father, the circuit court found that he sought no treatment from any sex-offender treatment program or therapy since the prior termination of his custodial rights. Moreover, the circuit court found that Petitioner Father failed to accept responsibility for his actions and failed to acknowledge the existence of a problem. The circuit court also considered testimony of the prior victim, M.T., who was now twenty-five years old. Petitioner Father presented M.T. as a witness at both the preliminary and adjudicatory hearings. M.T. testified that she fabricated the 2004 allegations of sexual abuse against Petitioner Father at the behest of a DHHR caseworker whom she feared. On cross-examination, however, M.T. first denied and then admitted, upon presentation, to having written a letter to her mother regarding the allegations of sexual abuse against Petitioner Father. This letter included drawings and details regarding Petitioner Father's sexual abuse of her. The circuit court ultimately found that while M.T. testified to having lied about the abuse in 2004, there was an equal possibility that she was lying on Petitioner Father's behalf in the current proceedings. Additionally, the circuit court considered testimony from Petitioner Father's cousin, C.C., who testified that Petitioner Father "molested" her when she was "little." C.C. further testified that she is still fearful of Petitioner Father and that her appearance in court was secured by subpoena. During this hearing, the circuit court also denied petitioners' motions for improvement periods upon the finding that they both denied any issues relating to abuse of the child.

In January of 2015, the circuit court held a dispositional hearing, during which it found there was no reasonable likelihood that petitioners could substantially correct the conditions of abuse or neglect in the near future and that termination of their parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioners' parental rights. Petitioners now appeal from the dispositional order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

2

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's credibility determination in regard to Petitioner Father's prior victim, M.T., in allowing the DHHR to proceed under West Virginia Code § 49-6-5b(a)(3), or in the evidentiary burden imposed at adjudication.

First, the Court finds no merit to petitioner's argument that the circuit court failed to consider testimony from his prior victim, M.T. According to Petitioner Father, he was completely exonerated of any prior abuse by M.T.'s recantation of her earlier allegations. It is true that M.T. took the stand twice in these proceedings and stated that she fabricated the allegations that led to the prior abuse and neglect proceedings against Petitioner Father. However, on cross-examination, M.T. also first denied and then admitted, upon presentation, to having written a letter to her mother at the time of the allegations in an attempt to convince her mother of the truth of the allegations. This letter included numerous specific facts regarding the sexual abuse, including locations in the home where the abuse was alleged to have occurred. Moreover, the circuit court also heard testimony from another of Petitioner Father's victims, C.C., who testified to prior sexual abuse as a child. Based upon this testimony, the circuit court concluded that M.T. was either lying in 2004 or in the current proceeding, and that the evidence was inconclusive as to whether the allegations of prior abuse were fabricated.

We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). While petitioners argue that the circuit court "committed reversible error by failing to consider M.T.'s testimony," the record is clear that the circuit court gave substantial consideration to the testimony. That it did not, ultimately, find it credible does not constitute reversible error. Petitioners argue that the circuit court's credibility determination regarding this witness effectively prevented them from developing evidence surrounding the prior involuntary termination and what steps were taken to remedy the situation, but the Court does not agree. To the contrary, M.T.'s testimony speaks directly to the prior allegations, and the fact that the circuit court ultimately found it lacked credibility did not deny petitioners due process. As such, we find no error in the circuit court's credibility determination in regard to M.T.'s testimony.

Next, the Court finds no error in the circuit court allowing the DHHR to proceed on the abuse and neglect petition under West Virginia Code § 49-6-5b(a)(3). On appeal, petitioners argue that it was error for the circuit court to proceed under "aggravated circumstances" because this statute states that the DHHR is required to file an abuse and neglect petition when it is determined that "the parental rights of the parent to a sibling have been terminated involuntarily." Petitioners' argument hinges on the fact that only Petitioner Father's custodial rights to M.T. were previously terminated; not his parental rights. Further, because the child in the prior case was his step-daughter, she is not P.W.'s sibling. As such, petitioners argue that the circuit court erred in treating the proceedings as an "aggravated circumstances" case. The Court,

however, does not find these arguments compelling because petitioners fail to recognize that Petitioner Mother's parental rights to two of P.W.'s older biological siblings were involuntarily terminated in a prior abuse and neglect proceeding. As such, it is clear that the DHHR had a statutory duty to file the instant abuse and neglect petition. Moreover, petitioners' argument on this issue conflates multiple statutes, as the term "aggravated circumstances" does not appear in West Virginia Code § 49-6-5b(a)(3). Instead, that term is used in West Virginia Code § 49-6-5(a)(7)(A), which sets forth circumstances in which the DHHR is not required to provide reasonable efforts to achieve reunification of the family prior to disposition.

Regardless, petitioners appear to argue that because only Petitioner Father's custodial rights to a child that is not P.W.'s sibling were involuntarily terminated, the circuit court was barred from proceeding under the following holding:

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present.

*In re Kyiah P.*, 213 W.Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999)). As noted above, it is undisputed that Petitioner Mother had a prior involuntary termination of her parental rights to P.W.'s biological siblings. For these reasons, the holding above clearly applies.

Finally, petitioners argue that the circuit court erred in shifting the burden of proof at adjudication from the DHHR to them in violation of our prior holdings, wherein we have stated that

> "[t]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings." Syl. pt. 2, in part, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 4, *In re K.L.*, 233 W.Va. 547, 759 S.E.2d 778 (2014). While it is true that several references were made by counsel for the DHHR that petitioners carried the burden of establishing what steps they had taken to remedy the issues of abuse and neglect from the prior proceedings, the record is clear that the burden was never inappropriately shifted to petitioners. Specifically, the circuit court's adjudicatory order contains multiple citations to *K.L.* and plainly states that "it is clear that the DHHR retains the burden of showing by clear and convincing evidence, even in a case [in] which there has been a prior termination of parental rights, that the

subject child is neglected or abused." As such, it is clear that the burden of proof in this matter was not inappropriately shifted to petitioners.

Further, the Court finds no merit to petitioners' argument that the DHHR failed to establish that Petitioner Father abused or neglected P.W. Petitioners argue that, as to Petitioner Father, the circuit court erred in finding that he abused P.W. because he was vindicated of the prior abuse to M.T. and that, even if he had not been absolved through her recantation, the abuse to that child may not be imparted to P.W. because the children are not biological siblings nor did he have his parental rights to M.T. terminated. Simply put, petitioners' argument on this issue is misguided and misstates the definition of "abused child." Pursuant to West Virginia Code § 49-1-3(1)(B), "'[a]bused child' means a child whose health or welfare is harmed or threatened by . . . [s]exual abuse or sexual exploitation[.]" It is clear that Petitioner Father constituted a threat to the child's welfare because of his past sexual abuse of a child in his home. The Court simply does not accept Petitioner Father's argument that he was vindicated of the prior abuse by M.T.'s recantation, as the circuit court specifically found that testimony lacked credibility. Further, the circuit court in this matter specifically found that, since the prior abuse and neglect proceeding, Petitioner Father "sought no treatment from any sex offender treatment program or other like-kind therapies." Additionally, the circuit court found Petitioner Father "fail[ed] to accept any responsibility for his actions and fail[ed] to acknowledge the existence of the problem . . . ." Simply put, regardless of the fact that Petitioner Father's prior abuse was perpetrated upon a child who is not P.W.'s sibling, it is clear that his failure to correct the conditions of abuse and neglect that led to the prior termination of his custodial rights constitutes abuse to P.W. As such, we find no error in regard to adjudication in this matter.

For the foregoing reasons, we find no error in the decision of the circuit court and its February 11, 2015, order is hereby affirmed.

Affirmed.

**ISSUED**: November 23, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II