# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **K.B., B.B., and N.B.**

**No. 16-0605** (Calhoun County 14-JA-12, 14-JA-13, & 14-JA-14)

**FILED**

**November 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.B., by counsel Ryan M. Ruth, appeals the Circuit Court of Calhoun County's May 16, 2016, order terminating his parental and custodial rights to seven-year-old K.B., six-year-old B.B., and four-year-old N.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem for the children ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred by (1) failing to remain impartial and unbiased in these proceedings, and (2) adjudicating him as an abusing parent.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court affirms the circuit court's termination of petitioner's parental and custodial rights to K.B. and B.B., but vacates and remands the circuit court's termination of petitioner's parental and custodial rights to N.B. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to resolve the issues presented.

This matter was previously before this Court. In the previous instance, petitioner appealed the circuit court's termination of his parental rights to the children. Petitioner argued that the circuit court erroneously based its termination solely on an earlier termination of petitioner's parental rights to an older child (which was, in turn, based on his failure to provide for, and general abandonment of, that older child) without any further findings of abuse or neglect. Following oral arguments on the issue, by memorandum decision entered in September of 2015, this Court reversed the circuit court's termination order and remanded for further proceedings. *See In re: K.B., B.B., & N.B.*, No. 14-0900, 2015 WL 5666987 (W.Va. Sept. 24, 2015) (memorandum decision). On remand, the circuit court entered an order on October 5, 2015, setting a status/scheduling hearing for October 8, 2015.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

Petitioner did not appear in person at the October 8, 2015, hearing, but he was represented by counsel. At that hearing, petitioner's counsel moved for supervised visits with the children. The guardian objected to the motion because there were new accusations that petitioner had sexually abused the children. The circuit court denied the motion for visits and scheduled an adjudicatory hearing for November 30, 2015. At the conclusion of the October 8, 2015, hearing, the circuit court noted that "[w]e'll get this over as quickly as possible[.]"

While the parties appeared for the November 30, 2015, adjudicatory hearing, the circuit court continued the matter to January 6, 2016, for two reasons: (1) petitioner complained of an illness that prevented him from fully participating in the hearing, and (2) the DHHR desired to further amend the abuse and neglect petition. Before adjourning on November 30, 2015, the circuit court ordered petitioner to submit to a drug screen that day. Thereafter, the DHHR filed a final amended abuse and neglect petition against petitioner in December of 2015. In that petition, in addition to other allegations, the DHHR alleged that petitioner abandoned the children; failed to protect K.B. from further sexual abuse upon learning in February of 2014 that she was sexually abused by a relative; committed domestic violence in the children's presence; failed to correct the conditions that led to the prior involuntary termination of his parental rights to his older child; and failed to provide the children with emotional and physical support.

Petitioner did not appear in person for the adjudicatory hearing held on January 6, 2016, but he was represented by counsel. Petitioner's counsel moved for a continuance on the basis that messages left for counsel indicated that petitioner was hospitalized with a head injury and could not attend the hearing. The circuit court denied the motion to continue the adjudicatory hearing because "the kids' lives are in limbo" and "[t]here's no verification that [petitioner] is medically unable to be here today." At the January 6, 2016, adjudicatory hearing, the children's mother testified to petitioner's conduct from approximately 2012 until 2016. According to the children's mother, petitioner choked her in the children's presence; refused to allow her and the children to leave their home; abused prescription pain medication; was fired from a job because he missed work due to repeated "hang overs" from drinking excessive amounts of alcohol; was not otherwise employed; provided no child support; and refused to comply with child protective services in the State of Ohio. The children's mother also recounted an episode that occurred after their separation in which petitioner kicked in her door, "beat up" her male roommate, "and left [the children] sitting there screaming and crying, and then the cops came." The children's mother further testified that petitioner had not adequately corrected his behavior and could not reunify with his children because

> he won't work. I'm pretty sure he doesn't have a job now. . . . He won't feed [the children]. He wouldn't cook or clean or do anything for them when we were together. And that wasn't that long ago. If he wanted to be a dad, he should've done it when he had the chance, instead of worrying about partying all the time.

Finally, the children's mother also noted that petitioner had only seen his children twice in as many years, although he had contacted them by telephone on other occasions. At that time, the circuit court continued the remainder of the adjudicatory hearing. Prior to the conclusion of the hearing, the guardian noted that petitioner had not submitted a drug screen at the conclusion of the November 30, 2015, hearing.

At the second adjudicatory hearing held in February of 2016, the circuit court heard testimony from DHHR workers who detailed the prior conditions of abuse and neglect in petitioner's prior involuntary termination of parental rights and his failure to correct those issues. According to that testimony, petitioner had previously failed to pay child support, failed to maintain contact, and failed to otherwise provide for his oldest child, M.N., which resulted in petitioner's involuntary termination of parental rights to that child. DHHR workers also testified that petitioner continued to fail to provide for his current children in the instant proceeding by failing to meet even their most basic needs, such as food, shelter, and clothing. Additionally, the children's former foster mother testified that she found one of the children placing his penis in another child's face, and when she asked the child why he did that, the child stated that petitioner "did it to me."

Based on the evidence presented, the circuit court found that the children's emotional and physical health was threatened by petitioner's abandonment of the children; domestic violence in the children's presence; failure to provide the children with necessities, such as food and clothing; failure to comply with services in prior child abuse and neglect proceedings; and failure to correct the circumstances that led to his prior involuntary termination of parental rights. Therefore, given those findings, the circuit court adjudicated petitioner as an abusing parent. During the proceedings on remand, the circuit court ordered DNA testing, which was not completed by the time of the dispositional hearings. Following two days of dispositional hearings, by order entered on May 16, 2016, the circuit court terminated petitioner's parental and custodial rights to K.B., B.B., and N.B. Subsequently, DNA test results proved that petitioner is not the biological father of N.B. It appears that the DHHR is currently pursuing an abuse and neglect action against N.B.'s true father, although the identity of that person seems to be unknown. Petitioner now appeals the circuit court's May 16, 2016, termination of his parental and custodial rights to K.B. and B.B., but the parties agree that petitioner is not and was not N.B.'s biological, step-, or adoptive parent.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

3

On appeal, petitioner first argues that the circuit court failed to remain impartial and unbiased following our remand of this matter in 2015. At the outset, we note that petitioner failed to cite any authority to support his arguments under this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, Chief Justice Menis E. Ketchum specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. However, assuming petitioner properly raised this assignment of error in compliance with this Court's rules, we would find no error.

Petitioner contends that the circuit court on remand "was simply going to go through the procedural motions and arrive at the same disposition of termination of parental rights." In support of his argument, petitioner cites to (1) the circuit court's October 5, 2015, order that set a hearing for October 8, 2015, which petitioner claims shows the circuit court's callous handling of his actual participation in this matter on remand, and (2) the circuit court's comment at the October 8, 2015, hearing that "[w]e'll get this over as quickly as possible[.]" Based on our review of the record on appeal, we disagree with petitioner's characterization of the circuit court's actions and comments as evidence of its bias and partiality.

Both of petitioner's factual assertions under this assignment of error relate to the timing of the proceedings on remand. We have often explained (as we did in our memorandum decision remanding this case to the circuit court in 2015) that matters involving abuse and neglect of children shall take precedence on the circuit court's docket and must be resolved as expeditiously as possible. *See* Syl. Pt. 5, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). As to claim that the October 8, 2015, hearing was scheduled too quickly for petitioner to appear, the record clearly shows that the October 8, 2015, hearing was a status/scheduling hearing attended by petitioner's counsel where no evidence was taken and no findings were made as to petitioner's adjudication or disposition. As to the circuit court's comment that this case would be disposed of quickly, the circuit court in no way took a position as to the adjudication or disposition of this case—whether favorable or unfavorable to petitioner—only as to the timing of these proceedings. It is important to note that in October of 2015, when the circuit court set the October 8, 2015, hearing on remand and made the comment regarding the expeditiousness of the proceedings, these children had been in judicial limbo for more than one year. We find no indication of bias in the circuit court's compliance with our law on the expediency of abuse and neglect proceedings, particularly under the circumstances of this case. On remand, the circuit court held multiple hearings in both the adjudicatory and dispositional phases of the proceedings

4

in an obvious effort to properly arrive at its findings and conclusions. For those reasons, we find no merit to petitioner's first assignment of error.

Next, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. Petitioner argues that the evidence does not support the circuit court's findings of abandonment, failure to protect, domestic violence in the children's presence, and failure to correct the conditions that led to the prior involuntary termination of his parental rights to his older child. Petitioner also contends that the findings of domestic violence related to acts that did not exist at the time of the filing of the final amended petition.

West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." In turn, West Virginia Code § 49-1-201 defines "[n]eglected child" as a child "[w]ho is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian" and defines "[a]bused child" as "a child whose health or welfare is being harmed or threatened by . . . a parent . . . who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child[.]" Petitioner correctly notes that West Virginia Code § 49-4-601(i) provides that the circuit court's "findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." Further, we have held that

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse . . . . Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) [now West Virginia Code § 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W.Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999)).

Here, the final amended petition was filed in December of 2015 and alleged abandonment, failure to protect K.B., domestic violence in the children's presence, and failure to correct the conditions that led to the prior involuntary termination of his parental rights to his older child. It is uncontested that petitioner had his parental rights to an older child involuntarily terminated due to abandonment for failing to pay child support, failing to maintain contact, and failing to provide for his oldest child. The evidence presented at the adjudicatory hearings on remand clearly established that petitioner failed to correct the conditions that led to his prior involuntary termination and again abandoned his children. The testimony of the children's mother and several DHHR workers at the adjudicatory hearings revealed that petitioner made little or no effort to provide for his children at any time, either financially or emotionally. He

visited the children only a few times in as many years and provided little or no food, clothing, supervision, and shelter for the children for the majority of their lives. We find that the evidence supports the circuit court's finding that petitioner was an abusing parent because his behavior continued from the time of his prior involuntary termination of parental rights through the instant proceeding. Based on that evidence alone, the circuit court's adjudicatory finding with regard to K.B. and B.B. must be affirmed.

Finally, the parties agree that DNA test results establish that petitioner is not the biological father of N.B. As such, on appeal, the parties discuss only petitioner's assignments of error as they relate to K.B. and B.B. While the circuit court's May 16, 2016, termination order relates to all three children, abuse and neglect proceedings were initiated against another individual as N.B.'s father as early as March of 2016. Further, multiple DHHR filings and orders by the circuit court subsequent to disposition refer to petitioner as the father of K.B. and B.B. only and simultaneously refer to B.M. as N.B.'s father.[2] This Court has held that a circuit court commits error in terminating a person's parental rights to a child where that person has been excluded as a parent by DNA evidence and has no other related rights to the child. *See In re R.S.*, No. 15-0179, 2015 WL 3875743 (W.Va. June 22, 2015)(memorandum decision) (vacating and remanding circuit court's termination order where DNA results submitted subsequent to disposition proved that petitioner was not the child's parent and where petitioner had no other rights to child). Here, DNA evidence excluded petitioner as N.B.'s parent, and there is no evidence that petitioner possessed other rights, such as custodial or guardianship rights, to N.B. at any time. For those reasons, while we affirm the circuit court's May 16, 2016, order as it relates to K.B. (Calhoun County 14-JA-12) and B.B. (Calhoun County 14-JA-13), we vacate that portion of the circuit court's May 16, 2016, order that terminated petitioner's parental and custodial rights to N.B. (Calhoun County 14-JA-14) and remand the matter to the circuit court with instructions to enter an order dismissing petitioner from N.B.'s abuse and neglect proceedings and addressing any related issues arising therefrom.

Therefore, we affirm, in part, and vacate and remand, in part, the circuit court's May 16, 2016, termination order.

Affirmed, in part, and vacated and remanded, in part.

**ISSUED**: November 21, 2016

---

[2]While B.M. was named as N.B.'s father in multiple filings and orders below, it is unclear from the record whether B.M. is, indeed, N.B.'s biological father or whether he was excluded as such. Without explanation, the record shows that abuse and neglect proceedings were initiated against N.B.'s "unknown father" (which included an order by the circuit court appointing the "unknown father" counsel) a few months after proceedings were initiated against B.M.

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II