**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **S.B.**

**No. 22-673** (Randolph County 21-JA-088)

**MEMORANDUM DECISION**

Petitioner Mother J.B.[1] appeals the Circuit Court of Randolph County's August 5, 2022, order terminating her parental rights to S.B.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In December 2021, the DHHR filed a petition alleging that petitioner gave birth to S.B. and that her parental rights were previously terminated—voluntarily and involuntarily—in prior proceedings to eight other children due to her transient lifestyle, abdication of parenting responsibilities, emotional and psychiatric instability, and unhealthy romantic relationships with various partners that resulted in domestic violence. The DHHR noted that it was required to seek termination of petitioner's rights to a subsequently born child due to the prior involuntary terminations. It also alleged that the conditions of abuse and neglect from the prior terminations had not been remedied.

Petitioner participated in a forensic psychological examination of parental fitness and a substance abuse evaluation with Dr. Edward Baker in April 2022, during which she blamed the various fathers and the DHHR for the children's removals and the terminations of her parental rights. Referring to the first child's removal, she claimed that the government used "falsified papers" and "took" the child from her. She further indicated that this Court encouraged her to "sue the hell out of Randolph County" and that she had been "railroaded" in her other cases. Petitioner also reported that she will not "shove pills down [her] throat the doctors are recommending" because that is how "you get people addicted to drugs."

---

[1]Petitioner appears by counsel Steven B. Nanners. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Heather Weese appears as the child's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Regarding the current case, she stated that she had the governor "in her pocket" and that she "worked for the government" when she actually worked for a private home care company for the elderly and disabled. Dr. Baker noted that petitioner exhibited grandiose thinking, paranoid ideation, and externalization of blame; he concluded that she took no responsibility for her past behaviors that led to the initiation of this case. He found that petitioner's insight and judgment were poor and determined that petitioner was at high risk for parenting deficits, as she tends "to treat children as objects for adult gratification." Dr. Baker diagnosed petitioner with borderline intellectual functioning and unspecified personality disorder with paranoid and borderline traits. Dr. Baker also concluded that petitioner "lacks the introspection necessary to make substantive changes even though she has lost 8 children, she takes absolutely no responsibility for how any of her actions have led to these conclusions." In his professional opinion, Dr. Baker found that petitioner does "not have the parental capacity to care, protect and change in order to provide adequately for her child at this time as she does not take responsibility for her situation and tends to blame others."

In June 2022, the circuit court held an adjudicatory hearing and heard evidence of petitioner's prior involuntary terminations, as alleged in the petition, and that she had not corrected the circumstances that led to the prior involuntary terminations.[3] The DHHR worker testified to concerns noted in petitioner's previous cases that included her inability to handle a crying infant; provide adequate physical, hygienic, and medical care; and bond with the children. Dr. Baker testified to his findings in his parental fitness evaluation of petitioner. Petitioner testified that shortly after the termination of her parental rights in 2015, she attended individual therapy sessions for three months. She also testified that she had employment, a suitable home, and the necessary infant supplies to care for S.B. Petitioner stated that she stopped attending therapy because she did not need it. At the conclusion of the hearing, the circuit court adjudicated petitioner as an abusing parent and found that petitioner had not participated in "any parenting classes, any domestic violence classes/healthy relationship classes or other services of that nature." The court concluded that petitioner demonstrated a lack of understanding of her prior circumstances that led to the prior terminations of her parental rights to eight other children and that the DHHR proved by clear and convincing evidence that petitioner had had no change of circumstances since her 2015 abuse and neglect proceeding.

The circuit court held a dispositional hearing in July 2022, wherein the DHHR moved to terminate petitioner's parental rights to S.B. Petitioner moved for an improvement period and testified in support thereof. The court denied petitioner's motion for an improvement period finding that she failed to demonstrate that she was likely to fully participate in its terms and conditions based upon her repeated failures to take corrective action to change her circumstances. The court took judicial notice of the evidence presented at adjudication. It noted Dr. Baker's opinion that petitioner needed consistent therapy and counseling to manage her mental illness but considered the fact that petitioner stopped participating in therapy after the termination of her parental rights to another child in 2015. The court also voiced concern with Dr. Baker's opinion that petitioner treated children as objects for her own gratification and that petitioner lacked the

_____

[3]Petitioner appealed the termination of her parental rights to another child, and this Court affirmed in *In re T.R.*, No. 15-1235, 2016 WL 3165801, at *3 (W. Va. June 6, 2016)(memorandum decision).

ability to safely parent a child. The court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. It further found that S.B. needed continuity in the care of caretakers and to be integrated into a stable home. Consequently, the court terminated petitioner's parental rights by order entered on August 5, 2022.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law *de novo*. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent because she corrected the conditions of abuse and neglect that led to prior cases by obtaining employment, housing, and baby items for S.B. and by having a "good support network." In this instance, "the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court . . . [and] the legislature has reduced the minimum threshold of evidence necessary for termination." *In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (citation omitted). The Court has held that

> [w]hen an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant . . . prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

Syl. Pt. 4, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999).

Here, petitioner fails to acknowledge the root of the problems that led to the prior removals and involuntary terminations of her parental rights—her inability to safely parent due to untreated mental illness. The record shows that Dr. Baker opined that petitioner required extensive individualized therapy and counseling to address her mental health issues, yet petitioner ceased therapy shortly after the termination of her parental rights in 2015. Petitioner testified that she had not participated in therapy or counseling since that time because she did not believe she needed it. Although petitioner claimed that S.B. was not an abused and neglected child, the DHHR proved that the child was at risk if she remained in petitioner's care due to petitioner's inability to safely parent. *See* W. Va. Code § 49-1-201 (defining "neglected child," in part, as one who is *threatened* by a parent's "failure or inability . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education"). Petitioner's lack of insight into how her personality disorder and untreated mental illness negatively impact her ability to safely parent a child constitutes an ongoing risk to S.B.— the ninth child removed from her care. Here, the DHHR established by clear and convincing evidence that S.B. was a neglected child, and we find no error in the circuit court's adjudication of petitioner. *See* W. Va. Code § 49-4-601(i) (requiring a circuit court to find, "by clear and convincing evidence," that a parent has abused and/or neglected a child at the conclusion of the adjudicatory hearing).

---

[4]The father voluntarily relinquished his parental rights. The permanency plan for the child is adoption by a foster family.

Petitioner also argues that the circuit court erred in denying her an improvement period. Petitioner cites her testimony that she would cooperate with services and fully participate in an improvement period. *See* W. Va. Code § 49-4-610(2). However, petitioner's refusal to acknowledge the conditions of abuse and neglect rendered the granting of an improvement period useless. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Additionally, petitioner's long history of abdicating her parental responsibilities to others and her continuing failure to provide necessities for the children were relevant to the court's determination that petitioner was not likely to improve. Although petitioner claimed she made some positive changes and had a support network, petitioner did not meet her burden of showing that an improvement period was warranted. As such, the circuit court did not err in denying petitioner an improvement period.

We, likewise, find no error in the termination of petitioner's parental rights to S.B. Notably, petitioner does not specifically challenge the findings required for termination. Nonetheless, the evidence supports the circuit court's determination when considering petitioner's failure to acknowledge her shortcomings and inability to safely parent due to untreated and unmanaged mental health issues. *See* W. Va. Code § 49-4-604(d) (defining no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected to mean that the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help"); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that "[t]ermination of parental rights . . . may be employed . . . when it is found that there is no reasonable likelihood . . . that the conditions of neglect or abuse can be substantially corrected"). Finally, petitioner's failure to acknowledge the conditions of abuse and neglect supports the court's finding that termination was necessary to protect the child from further abuse. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights to S.B.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 5, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: September 20, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn