# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 6, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **J.S.-1, J.S.-2, J.S.-3, and J.S.-4**

**No. 16-0334** (Clay County 15-JA-42, 15-JA-43, 15-JA-44, & 15-JA-45)

## MEMORANDUM DECISION

Petitioner Mother J.S.-5, by counsel Barbara Harmon-Schamberger, appeals the Circuit Court of Clay County's February 22, 2016, order terminating her parental rights to J.S.-1, J.S.-2, J.S.-3, and J.S.-4.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael W. Asbury Jr., filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights upon erroneous findings about a prior abuse and neglect proceeding and that the conditions of abuse and neglect could not be substantially corrected. Further, petitioner argues that the circuit court erroneously shifted the burden of proof from the DHHR and that the guardian failed to satisfy his obligations in representing the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2015, the DHHR filed an abuse and neglect petition against the parents and alleged that their drug abuse impaired their ability to properly parent the children. Specifically, the DHHR alleged that petitioner abused drugs during her pregnancy with J.S.-4. At the time of J.S.-4's birth, the child tested positive for diazepam, Oxycodone, and THC. Shortly after the child's birth, petitioner tested positive for methamphetamines, opiates, benzodiazepines, amphetamines, Oxycodone, and Suboxone, and petitioner could not provide valid prescriptions for any of these substances. Further, the DHHR alleged that the parents failed to provide the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and the children in this matter share the same initials, the Court will refer to the children as J.S.-1, J.S.-2, J.S.-3, and J.S.-4 and to petitioner as J.S.-5 throughout this memorandum decision.

children with a suitable home. The parents waived their right to a preliminary hearing that same month.

During an adjudicatory hearing in August of 2015, the parents stipulated to the allegations in the petition, and the circuit court found them to be abusing parents. Following the stipulations, the DHHR provided the parents with various services, including parenting instruction, life skills training, and transportation services. The DHHR also offered the parents drug treatment and rehabilitation on several occasions. Although the parents initially complied with services, they began to miss appointments for services in September of 2015 and repeatedly tested positive for drugs or avoided or refused to submit to drug screens throughout the remainder of the proceedings. The parents also refused to enter drug treatment programs. Additionally, petitioner continually refused to submit to the psychological evaluation she requested, which resulted in rescheduling the same four times. Further, due to repeated positive drug screens, both parents missed several opportunities to visit with the children, as visitation was predicated on repeated negative screens. In regard to her noncompliance with services, petitioner repeatedly informed members of the multidisciplinary team that she believed she had "stage 3 cancer," although it was later revealed that no such diagnosis was ever made.

In November of 2015, petitioner entered a detoxification facility for six days and tested positive for illicit drugs on November 10, 2015. From this point until the final dispositional hearing, petitioner continued to abuse drugs and ultimately tested positive for illicit drugs as late as December 15, 2015, just one week prior to the final dispositional hearing.

In December of 2015, the circuit court held a dispositional hearing, during which it found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because of her continued drug abuse and failure to accept responsibility for her actions. Ultimately, the circuit court terminated petitioner's parental rights to the children. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

To begin, the Court finds no error in regard to petitioner's first assignment of error, wherein she alleges that the circuit court improperly applied a stricter standard at disposition than allowed by law. Petitioner bases this claim solely upon the circuit court's finding at the dispositional hearing that she failed to correct the conditions "out of which the prior abuse and neglect have arisen[.]" According to petitioner, this finding establishes that the circuit court improperly applied the following standard to disposition:

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present.

*In re Kyiah P.*, 213 W.Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999)). The Court, however, does not agree.

In support of her argument, petitioner claims that she has never been involved in an abuse and neglect proceeding. She further cites solely to one line of the dispositional hearing transcript, wherein the circuit court found there was no reasonable likelihood that petitioner could correct the conditions "out of which the prior abuse and neglect have arisen . . . ." To be clear, this is the lone evidence upon which petitioner bases this assignment of error. However, a review of the record shows that the circuit court was clearly familiar with the history of the abuse and neglect proceeding, and there is no evidence to indicate that the circuit court imposed the dispositional standard above regarding disposition in abuse and neglect cases that concern a prior involuntary termination of parental rights. Moreover, the circuit court's orders in this matter, including the dispositional order, are entirely devoid of any reference to a prior involuntary termination of petitioner's parental rights to older children or any prior abuse and neglect proceeding involving petitioner. As we have held many times, "[i]t is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W.Va. 478, 483, 637 S.E.2d 576, 581 (2006). *See State v. White*, 188 W.Va. 534, 536 n. 2, 425 S.E.2d 210, 212 n. 2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson*, 156 W.Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]" (citations omitted)). As such, we find no error in regard to petitioner's first assignment of error.

Next, the Court finds no error in the circuit court's determination that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. In support, petitioner argues that the circuit court erred in making this finding because she obtained a fit home, was "inordinately distressed by having her children removed and laboring under the misapprehension that she was in stage 3 cancer[,]" and her psychological evaluation was not completed in order to implement the recommendations into a family case plan. The Court, however, finds that these arguments are without merit. While it may be true that the circuit court found that petitioner had obtained suitable housing, the record is clear that petitioner made no progress in correcting the other conditions of abuse and neglect in the home. Specifically, the circuit court found that petitioner continued to abuse drugs throughout the proceedings and made little effort to curb her abuse, including her failure to submit to drug treatment and the fact that she was able to remain in detoxification for only six days before again testing positive for illicit substances.

Petitioner's argument on appeal that her continued drug use constituted a relapse brought on by the stress of her children's removal and an alleged medical diagnosis only illustrates petitioner's continued attempt to minimize her conduct. As the circuit court found at disposition, petitioner "failed to accept responsibility" for her abuse and neglect of the children, and her argument on appeal only reinforces this finding. According to petitioner, because of her alleged cancer diagnosis, she was unable to comply with services prior to November 10, 2015, at which point her medical provider testified that petitioner did not, in fact, have cancer. However, petitioner's argument ignores her continued drug abuse and noncompliance with services, including her failure of a drug screen as late as December 15, 2015, following her medical provider's testimony and her own realization that she had not been diagnosed with cancer.

Additionally, petitioner's argument regarding the failure to implement any recommendations from a psychological evaluation is meritless, considering that petitioner was responsible for the delay in submitting to the evaluation. The record is clear that petitioner's psychological evaluation was rescheduled four times due to her failure to appear and was not completed until December 11, 2015, less than two weeks prior to the dispositional hearing. We have previously held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Based upon this holding, it is clear that the circuit court was not required to delay permanency for the children by waiting on results of a psychological evaluation that petitioner delayed through her noncompliance. Moreover, pursuant to West Virginia Code § 49-4-604(c)(1), there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected when

4

[t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning . . . .

As addressed above, petitioner's drug abuse continued throughout the proceedings. As such, it is clear that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect. The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon these findings.

Next, the Court finds that the circuit court did not improperly shift the burden of proof to petitioner at the dispositional hearing. In support of this assignment of error, petitioner cites to our prior holdings, wherein we have stated as follows:

"[T]he burden of proof in a child neglect or abuse case does not shift from the [DHHR] to the parent, guardian or custodian of the child. It remains upon the [DHHR] throughout the proceedings." Syl. pt. 2, in part, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 4, *In re K.L.*, 233 W.Va. 547, 759 S.E.2d 778 (2014). Based upon this holding, petitioner argues that the circuit court improperly shifted the burden of proof to her, as evidenced by its finding that the parents "failed to establish by clear and convincing evidence that they have the desire or will to comply with any terms [or] conditions of any improvement period." The Court, however, finds that the circuit court did not improperly shift the burden of proof at disposition to the parents. Instead, it is clear that the circuit court was simply addressing a parent's burden of establishing that he or she is likely to fully participate in an improvement period, as required by West Virginia Code §§ 49-4-610(1)(B), 2(B), and 3(B).

While it is true that we have held that the burden of proof on the ultimate disposition of an abuse and neglect case does not shift to the parent, we have similarly held that the burden of obtaining an improvement period within an abuse and neglect proceeding falls squarely on the parent. *See In re Timber M.*, 231 W.Va. 44, 56, 743 S.E.2d 352, 364 (2013) (holding that the mother therein "was required to prove 'by clear and convincing evidence' that she was 'likely to fully participate in the improvement period'" pursuant to West Virginia Code § 49-6-12(b)(2) [now West Virginia Code § 49-4-610(2)(B)].).

According to petitioner, the circuit court's finding about her failure to prove she would fully comply with an improvement period shows that the circuit court improperly focused on what she could prove and ignored what the DHHR failed to prove. However, petitioner's argument ignores two important facts. The first is that both she and the father requested additional time to comply with services at the dispositional hearing. As noted above, petitioner sought to delay disposition so that the recommendations of her psychological evaluation could be implemented. So although petitioner did not formally request an improvement period, it is clear

that she sought a delay in disposition so that she could attempt to achieve reunification with her children. As such, the circuit court properly focused on the fact that petitioner failed to provide any evidence that she would fully participate with these services if disposition was delayed and found, in accordance with West Virginia Code § 49-4-610(3)(B), that petitioner failed to satisfy her burden of proof for obtaining such an improvement period.

Second, although petitioner argues on appeal that "[i]t is impossible to tell from the [circuit] court's discussion" how it came to its ultimate conclusion as to disposition, the record is abundantly clear that the circuit court properly weighed the evidence and found that the DHHR satisfied its burden of proof in regard to termination of petitioner's parental rights. Specifically, the record shows that the circuit court found that, "based upon clear and convincing evidence," the DHHR proved that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. As such, petitioner's argument regarding any confusion as to the standard applied at disposition is without merit.

Finally, the Court finds no merit to petitioner's argument that the circuit court erred in terminating her parental rights without requiring the guardian to comply with his statutory duties.[2] Specifically, petitioner claims that the guardian failed to conduct an independent investigation into the facts of the case, file a written report with the circuit court, or participate in MDT meetings, among other allegations. As such, petitioner argues that the guardian was unable to assess petitioner's improvement plan to achieve reunification with the children or provide unbiased opinions regarding the children's future care. Petitioner further argues that the guardian's failure to comply with the process established to protect the children's best interests requires vacation of the dispositional order. The Court, however, does not agree.

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). In support of her appeal, petitioner fails to allege what evidence, if any, the guardian should have presented that could have substantially impacted the circuit court's termination of her parental rights. Further, petitioner fails to demonstrate how any of the guardian's alleged inaction prejudiced her in any way. Regardless of whether the guardian complied with his duties, the record is clear that petitioner failed to comply with the terms and conditions imposed upon her below and, in fact, continued to actively abuse drugs throughout the proceedings. Even if petitioner's allegations against the guardian were accepted as true, it would not alter the fact that the circuit court's

---

[2]According to the record, the guardian that responded to petitioner's appeal is not the same individual that served as guardian in the proceedings below.

termination of petitioner's parental rights was based upon petitioner's well-documented failure to remedy the conditions of abuse and neglect. As such, we find that vacation of the dispositional order is not warranted and affirm the circuit court's termination of petitioner's parental rights.[3]

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: September 6, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[3]Our ultimate ruling should not be construed as an approval of guardians ad litem in abuse and neglect cases failing to properly represent their clients in compliance with the applicable rules and statutes governing such representation. While the Court declines to address the sufficiency of the guardian's representation below, we nonetheless find that the specific facts of this case do not warrant vacation of the resulting dispositional order, given the overwhelming evidence that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of petitioner's parental rights was necessary for the children's welfare. However, we remind guardians that

> [e]ach child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, W.Va.Code [§] 49–6–2(a) [now W.Va. Code § 49-4-601(f)(1)] . . . mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings.

Syl. Pt. 5, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993). In that case, we went on to address several duties imposed upon guardians, including the requirement "that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court[;]" as well as the requirement that "an attorney [must] provide competent representation to a client, and . . . act with reasonable diligence and promptness in representing a client." *Id.* at 26, 435 S.E.2d at 164, Syl. Pt. 5. We further stated that "[t]he Guidelines for Guardians Ad Litem in Abuse and Neglect cases, . . . adopted in [*Jeffrey R.L.*], are in harmony" with the applicable statutes and rules governing both guardians ad litem specifically and attorneys generally, "and provide attorneys who serve as guardians ad litem with direction as to their duties in representing the best interests of the children for whom they are appointed." *Id.* We reiterate that holding herein, given the importance of the representation of children in such cases.

7