# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: H.J., D.J., and A.J.-1

No. 16-0727 (Logan County 14-JA-37-O, 14-JA-38-O, & 14-JA-40-O)

## MEMORANDUM DECISION

Petitioner Mother A.J.-3, by counsel Cynthia M. Ranson and G. Patrick Jacobs, appeals the Circuit Court of Logan County's June 28, 2016, order terminating her parental rights to H.J., D.J., and A.J.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel John W. Bennett, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), L. Scott Briscoe, filed a response on behalf of the children in support of the circuit court's order. The unknown fathers, by counsel Steven S. Wolfe, filed a response in support of the circuit court's order. The guardian and unknown fathers filed a supplemental appendix. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon insufficient evidence.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2014, the DHHR received a referral regarding petitioner's use of cocaine while breastfeeding her infant child A.J.-1. Child Protective Services ("CPS") investigated, and child

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as A.J.-1, A.J.-2, and A.J.-3 throughout the memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

1

H.J. confirmed that petitioner breastfed A.J.-1. While petitioner denied breastfeeding the infant, petitioner's mother reported that petitioner did breastfeed the child. Petitioner's mother additionally expressed concern about petitioner caring for the children. H.J. also informed CPS that petitioner recently fell asleep while driving them from the Commonwealth of Kentucky.

That same month, the DHHR filed an abuse and neglect petition that alleged petitioner's substance abuse impaired her ability to care for the children.[3] According to the petition, petitioner was prescribed methadone and was abusing cocaine while caring for the children, including breastfeeding A.J.-1. The petition further alleged that petitioner's recent drug screen was "presumptive positive" for cocaine and methadone. Moreover, the DHHR alleged that petitioner had a substantial history of CPS intervention, including two prior removals of children from the home. The circuit court held several preliminary hearings in June of 2014, September of 2014, and October of 2014, although petitioner did not appear in person despite being represented by counsel. At the September of 2014 preliminary hearing, the guardian requested that petitioner be required to submit to drug screens in order to visit her children. Thereafter, petitioner registered more "presumptive positive" screens and, in October of 2014, she screened positive for benzodiazepines, opiates, cannabinoids, cocaine, and methadone, and the circuit court suspended her visitation rights.

In December of 2014, the DHHR filed an amended petition to include allegations that petitioner provided seven positive drug screens between June of 2014 and October of 2014 for multiple substances, including cocaine, methadone, cannabinoids, and opiates. The petition further alleged that petitioner's parental rights to an older child were involuntarily terminated in the State of Tennessee. In February of 2015, the circuit court ordered petitioner to undergo a psychological evaluation. Thereafter, petitioner requested a pre-adjudicatory improvement period and moved to reinstate her visitation rights.

In May of 2015, the circuit court held a hearing on petitioner's request to reinstate her visitation with the children. During the hearing, a therapist testified in opposition to reinstating visitation because of issues concerning petitioner's inappropriate behavior during visits and the children's behavior following visits. Ultimately, the circuit court agreed to resume visits between petitioner and A.J.-1, but declined to allow petitioner visits with D.J. and H.J.

In July of 2015, the circuit court held a hearing on petitioner's motion for an improvement period. The circuit court denied petitioner's motion, but did require the DHHR to pay for petitioner's treatment at a rehabilitation program. The circuit court also took up the issue

---

[3]The original petition listed the following five children: H.J., D.J., A.J.-1, A.J.-2, and J.J. It was later determined that petitioner's parental rights to J.J. were terminated in the State of Tennessee. Further, petitioner's visitation rights to A.J.-2 were terminated and temporary custody was transferred to the paternal grandparents by the State of Ohio. By order entered in May of 2015, the circuit court dismissed J.J. and A.J.-2 from the proceedings because of their custodial arrangements. Because these children were removed from the petition below and were subject to the jurisdiction of courts in other states, they are not the subject of this appeal. The petition further listed two unknown fathers. By order entered in July of 2016, the parental rights of the unknown fathers were involuntarily terminated.

of adjudication, at which point petitioner admitted that her untreated mental health issues and substance abuse resulted in the children's neglect. Accordingly, the circuit court adjudicated the children as neglected. Thereafter, petitioner filed a "Motion To Set Aside Waiver Of Adjudicatory Hearing" and argued that she did not understand that she was admitting to neglecting the children during the hearing.

In November of 2015, the circuit court held a hearing on petitioner's "Motion To Set Aside Waiver Of Adjudicatory Hearing" during which it heard testimony from petitioner regarding her prior admission. Ultimately, the circuit court found that petitioner was familiar with abuse and neglect proceedings by virtue of her involvement in several such cases. The circuit court further found that at the July of 2015 hearing, petitioner "made admissions on the record at a time when she was not under the influence of medication, controlled substances, or alcohol." Moreover, the circuit court found that petitioner's later testimony concerning her admissions established that they were accurate. As such, the circuit court denied petitioner's motion. The circuit court then turned to petitioner's motion for a post-adjudicatory improvement period, which it denied. The circuit court further found that due to the aggravated circumstances of her prior involuntary termination of parental rights to an older child, the DHHR was not required to make reasonable efforts to reunify the family.

In December of 2015, the DHHR filed an amended petition that set forth a number of recent criminal charges against petitioner, including DUI, driving on a revoked license, breaking and entering, public intoxication, disorderly conduct, and assault on government personnel. The circuit court initially scheduled a dispositional hearing for January of 2016, but the same was continued because of petitioner's positive drug screen taken that day. In fact, petitioner's counsel joined in requesting a continuance so that petitioner would be sober enough to participate in the dispositional hearing. A dispositional hearing in February of 2016 was also rescheduled due to petitioner's hospitalization.

In March of 2016, the circuit court held a dispositional hearing, after which it issued an order terminating petitioner's parental rights. According to the circuit court, petitioner failed to submit to regularly scheduled drug screens; provided screens positive for cocaine, opiates, and oxycodone when she did attend screens; and was "terminated from the Shepherd's Program of Recovery and Transformation . . . due to abnormal and suspicious behavior, as well as for leaving without permission . . . ." The circuit court also found that petitioner was involuntarily hospitalized for mental health issues in February of 2016. Moreover, the circuit court noted that petitioner entered a guilty plea to one count of public intoxication in November of 2015 and had not visited the children since January of 2015. Based upon these findings, the circuit court found that petitioner "[was] addicted to illicit substances and [was] diagnosed with mental health issues, for both of which she [was] unwilling to acknowledge or accept treatment . . . ." Accordingly, the circuit court terminated her parental rights.[4] It is from the resulting order that petitioner appeals.

---

[4]The parental rights of all parents to all children were terminated below. By order entered in December of 2015, the circuit court approved separation of the siblings for purposes of adoption. According to the parties, H.J. and D.J. reside in one pre-adoptive foster home while A.J.-1 resides in a separate pre-adoptive foster home. According to the DHHR's Unified Child

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error. On appeal, petitioner argues that the proceedings below were "procedurally mishandled resulting in an improper termination of [her] parental rights." In support of this argument, petitioner alleges that the DHHR failed to meet its burden of proof because the evidence established that she was incapable of breastfeeding and the DHHR never confirmed that A.J.-1 had drugs in her system. Essentially, petitioner argues that the DHHR never established abuse or neglect because it failed to prove that she breastfed the infant while abusing drugs. We find no merit to this argument, however, because petitioner fails to acknowledge that the DHHR filed two subsequent abuse and neglect petitions in this matter, including one that alleged aggravated circumstances due to the prior involuntary termination of her parental rights to an older child.

We have previously held that

> "W.Va.Code, 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, In Interest of S.C., 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). Further, in addressing aggravated circumstances, we have held that

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child

---

Or Family Case Plan, the permanency plan for the children is adoption by their respective foster families.

4

must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998) [now West Virginia Code §§ 49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) [now West Virginia Code § 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W.Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999)). Here, the DHHR alleged aggravated circumstances due to the involuntary termination of petitioner's parental rights to an older child, which is one of the factors set forth in West Virginia Code § 49-4-605(a).

At the adjudicatory hearing, the circuit court specifically addressed the fact that the current abuse and neglect petition was predicated upon the fact "that [petitioner's] past history and her substance abuse issues led to the situation that her substance abuse impaired her ability to properly parent these children," in conjunction with "the untreated or continuing lack of treatment for the mental health" issues. Further, it was alleged that there was "a lack of evidence that the mental health issues have been addressed" since the prior termination. Following this discussion, petitioner specifically admitted that she had both persistent mental health and substance abuse issues, which the circuit court accepted for purposes of adjudication. As such, it is clear that the lack of evidence relating to petitioner breastfeeding the child is irrelevant, in light of the DHHR's allegation of aggravated circumstances and petitioner's admission to the persistent issues of untreated mental health and substance abuse. For these reasons, we find no error in the circuit court's adjudication of petitioner.

Moreover, petitioner argues that the circuit court erroneously shifted the burden of proof to her in these proceedings in contradiction to our prior holdings. Petitioner is correct that we have held as follows:

"[T]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child. It remains upon the State Department of [Health and Human Resources] throughout the proceedings." Syl. pt. 2, in part, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 4, *In re K.L.*, 233 W.Va. 547, 759 S.E.2d 778 (2014). Indeed, the burden of proof in this matter was not improperly shifted to petitioner. On appeal, petitioner's entire burden shifting argument is based upon the circuit court's finding that she failed to meet her burden of proof for obtaining an improvement period. However, petitioner's argument fails to recognize that West Virginia Code § 49-4-610 specifically requires that a parent seeking an improvement period must "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." As such, it is clear that the circuit court's finding regarding petitioner's failure to establish that she would fully comply with an improvement period did not constitute an

5

improper shifting of the burden required to adjudicate petitioner or terminate her parental rights. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 28, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 22, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker