# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* A.C.

No. 20-0593 (Webster County 18-JA-24)

## MEMORANDUM DECISION

Petitioner Mother T.C., by counsel Andrew B. Chattin, appeals the Circuit Court of Webster County's July 7, 2020, order terminating her custodial rights to A.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was the subject of prior abuse and neglect proceedings with regard to an older child. In those proceedings, which commenced in 2016, a petition was filed based upon petitioner's issues with domestic violence, among other things. Petitioner was granted an improvement period; however, petitioner failed to adequately participate in the proceedings and her situation worsened. At the conclusion of the proceedings, the circuit court determined that petitioner had been "less than truthful" throughout the case; caused injuries to herself and blamed them on the older child's father; and missed several hearings, including the final dispositional hearing, due to suspect "emergencies." The circuit court also found that petitioner demonstrated an inability to maintain suitable housing and employment. Despite the DHHR's financial assistance with two separate apartments, petitioner was evicted. Petitioner also published social media posts about the case and made inappropriate comments to the child during visitations. Accordingly, the circuit court

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

terminated petitioner's parental rights to the older child by order entered on February 12, 2018. Petitioner appealed the termination of her parental rights, and this Court affirmed the circuit court's order. *See In re C.C.*, No. 18-0259, 2018 WL 4944439 (W. Va. Oct. 12, 2018)(memorandum decision).

In May of 2018, petitioner gave birth to the child at issue in this appeal, A.C. The DHHR filed the instant child abuse and neglect petition against petitioner, alleging that she had not addressed the conditions of abuse and neglect from the prior proceedings. At the preliminary hearing held later that month, the circuit court took judicial notice of petitioner's prior abuse and neglect case and heard evidence. After hearing petitioner's testimony, the circuit court stated that "her situation and testimony almost sounds identical to the prior case" and noted its concern "about the stability of the mother's home and her mental health issues."

The circuit court held an adjudicatory hearing in June of 2018. After hearing testimony, the circuit court noted that "[o]ne problem that led to the termination of [petitioner's parental] rights in the prior proceedings was that she did not have nor would she maintain a fit and suitable home" and that petitioner previously misrepresented facts about her housing, employment, and rent. The circuit court observed that, as of the instant petition's filing, petitioner had not corrected the circumstances of abuse and neglect that led to the prior termination of her parental rights, and she still had no suitable home. The circuit court concluded that petitioner's behavior in the instant case was the same pattern of behavior as in the prior case and, accordingly, adjudicated her as an abusing parent.

In August of 2018, the circuit court held a dispositional hearing. Despite finding petitioner's testimony not credible, the circuit court granted her a post-adjudicatory improvement period. The circuit court ordered petitioner to immediately obtain suitable housing and employment and begin counseling.

After nearly two years of services, the circuit court held a final dispositional hearing. A service provider testified that petitioner's home continued to be unsuitable as there was dog feces and urine on the floors during supervised visits with the child. The service provider supplied nine dates that she observed feces or urine in petitioner's home while the child was there. The service provider also testified that, at times, petitioner did not have necessary supplies for the child during visits, such as diapers and wipes, and petitioner failed to pay attention to the child by playing on her phone. Further, petitioner cancelled visits due to alleged medical emergencies on three occasions and cancelled or failed to show up on other occasions. The service provider stated that petitioner also posted a live video of her visit with the child on Facebook and lied about her place of employment. The provider explained that petitioner had asked the provider to drop her off at work after a visit, and the provider later learned that the location at which she had dropped petitioner off was the residence of a man she was allegedly dating.

Petitioner presented the testimony of a former service provider, who testified positively about petitioner's interactions with the child during the time she supervised visits, which was approximately five months in 2019. The worker stated that petitioner's home was always appropriate, and she never observed feces or urine on the floors. The worker conceded, however, that petitioner had canceled visits due to alleged medical emergencies and that she had accepted petitioner's explanations without documentation of proof.

Petitioner testified that she had lived in four different homes since the petition's filing. Regarding the allegations of dog feces in the home, petitioner claimed that she was training the dogs and cleaned up any messes the dogs made. Petitioner denied that there were multiple occasions when the dogs had defecated or urinated on the floors and, despite the concerns voiced by the service provider, stated that she was not going to get rid of the dogs. Although petitioner claimed that she submitted paperwork to renew her housing assistance, rebuttal evidence was presented that the person petitioner allegedly spoke to and submitted her paperwork to had not worked for that agency in several months. As to her alleged medical emergencies, petitioner testified that she tried to give her documentation to the service provider, but it was refused. Petitioner further testified that she did not understand why she was adjudicated as an abusing parent and denied that she publicly posted about the case on social media. When confronted with a copy of her social media post, petitioner claimed that she meant to make the post privately in a "therapy" group.

After hearing evidence, the circuit court terminated petitioner's custodial rights to the child, finding that there was no reasonable likelihood that petitioner could address the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. The circuit court noted that petitioner's psychological evaluation indicated that she was unlikely to be rehabilitated. Further, as in the prior case, petitioner continued to be "less than truthful and fail[ed] to accept [responsibility] for her actions." While petitioner maintained stable housing for a period of time, the circuit court doubted whether that would continue due to petitioner's testimony regarding her application for continued housing assistance. It is from the July 7, 2020, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The father successfully addressed the conditions of abuse and neglect, and the petition against him was dismissed. The child was returned to his care and the permanency plan for the child is to remain with the father.

On appeal, petitioner argues that the circuit court erred in terminating her custodial rights. Petitioner contends that the prior petition was based upon allegations of domestic violence and drug abuse, and that no such concerns were raised during the instant proceedings. As such, "it is a fact that the conditions of domestic violence and drug use which existed in the prior abuse case had been completely corrected" by petitioner. She claims that because she corrected these conditions of abuse and neglect, termination of her custodial rights in the instant case was "far too drastic." Petitioner was employed, participated in supervised visits with the child, participated in parenting classes, and maintained suitable housing. Petitioner contends that she was doing everything she could to be successful in her improvement period; that her truthfulness, or lack thereof, was "very subjective in nature"; and that the DHHR workers had a personal bias against her. Considering this evidence, petitioner states it was error to not reunite the child with her.

West Virginia Code § 49-4-604(c)(6) directs circuit courts to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Moreover, "the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § [49-4-605(a)] is present." *In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W. Va. 435, 437, 518 S.E.2d 863, 865 (1999)); *see also* W. Va. Code § 49-4-605(a) (outlining factors under which the DHHR must seek termination of a parent's parental rights).

The evidence supports a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Petitioner was provided at least one improvement period in her prior proceedings but failed to remedy the conditions of abuse and neglect, resulting in the termination of her parental rights to an older child. One issue specifically leading to the termination of petitioner's parental rights in that prior proceeding was her lack of suitable housing. In the instant proceedings, petitioner moved residences multiple times and failed to address sanitary issues in the home. Dog feces and urine on the floors were noted on at least nine supervised visits with the child, and petitioner refused to address the issue or remove the dogs. Moreover, the circuit court noted that petitioner continually failed to acknowledge her actions or be truthful with the court, much like in the prior proceedings. Petitioner denied issues with her home, testified that she did not understand why she had been adjudicated as an abusing parent in the instant proceedings, and denied posting about the case on social media even when confronted with copies of the posts. While petitioner briefly maintained housing, she testified that she submitted paperwork to renew her housing assistance but the worker she allegedly spoke to had not been employed by that agency for several months. Although petitioner claims that the DHHR workers have a personal bias against her, the record is clear that she failed to adequately acknowledge the conditions of abuse. Lastly, the circuit court relied on petitioner's psychological evaluation report, which indicated that petitioner perceived little need for behavioral change. The psychological report further indicated petitioner's prognosis for attaining minimally adequate parenting was poor, "largely due to [her] history of anger dyscontrol and domestic violence, emotional dysregulation, poor judgment, poor insight, impaired sense of empathy, persistent

4

inability to meet her children's basic needs, personality involvement in referral concerns, and poor response to previous efforts at intervention." Accordingly, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. To the extent petitioner claims the circuit court should have imposed a less-restrictive alternative to the termination of her custodial rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the "reduced . . . threshold of evidence necessary for termination" in this case, we find no error in the circuit court terminating petitioner's custodial rights to the child. *Kyiah P.*, 213 W. Va. at 427, 582 S.E.2d at 874.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison