**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **P.H.**

**No. 21-0194** (Nicholas County 20-JA-122)


**MEMORANDUM DECISION**


Petitioner Father R.H., by counsel Joseph Mosko, appeals the Circuit Court of Nicholas County's February 3, 2021, order terminating his parental and custodial rights to P.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Susie Hill, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to impose a less-restrictive dispositional alternative to termination of his parental and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the governing law, the briefs, and the record presented, the Court finds that the circuit court erred in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and, therefore, in terminating petitioner's parental and custodial rights. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate, in part, and remand the matter for further proceedings consistent with this decision.

In October of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner was in arrears on child support in the amount of $1,378.34. According to the petition, petitioner previously voluntarily relinquished his parental rights to two older children in an abuse and neglect proceeding initiated in 2015. This constitutes the entirety of the DHHR's allegations against petitioner.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In December of 2020, the circuit court held an adjudicatory hearing. Petitioner did not attend but was represented by counsel. At the time, petitioner's counsel proffered that petitioner was in a drug rehabilitation program. Based on the evidence, the court found that there was *insufficient* evidence to establish that petitioner previously voluntarily relinquished his parental rights to older children. As such, the only remaining allegation against petitioner from the DHHR's petition was the child support arrearage. In adjudicating petitioner, the court found that he "played very little part in the life" of the child and lacked safe and suitable housing, a job, or any other means to support the child. The court also noted that petitioner failed to stay in contact with either the DHHR or his own counsel. As such, the court adjudicated petitioner of abusing and neglecting the child and barred him from having any contact with the child.

Following this hearing, the guardian filed a report recommending termination of petitioner's parental rights because of his failure to participate in the proceedings. According to the guardian, this lack of participation showed that petitioner would not participate in an improvement period and could not substantially correct the conditions of abuse and neglect. The guardian's report, however, does not contain any specific explanation as to why termination would be appropriate. In fact, the section in the guardian's report titled "Recommendation" reads, in its entirety, as follows:

> I recommend that [R.H.] and [R.S.][2] be terminated at [sic] to their parental and custodial rights to their children. Their failure to[.]"

This section ends midsentence and provides no explanation as to why termination of petitioner's parental and custodial rights was appropriate or necessary. In regard to petitioner's prior voluntary relinquishment of parental rights, the guardian's report stated that "[d]iscovery does not show the reason for the terminations." Despite this admission, the guardian nonetheless stated in the report that "[t]here is no evidence or likelihood that [petitioner] has corrected the circumstances that led to the termination of his prior children."

In January of 2021, the circuit court held a dispositional hearing, during which the court heard testimony from a DHHR worker and petitioner. Petitioner also moved for an improvement period. According to the DHHR worker, petitioner made a child support payment in December of 2020 in the amount of $1,100, bringing his arrearage down to $487.23. The worker also confirmed that she spoke with petitioner's rehabilitation facility, petitioner was "doing well in the rehab," and petitioner had also obtained employment. Finally, the DHHR worker indicated that petitioner's prior abuse and neglect concerned lack of employment and safe and suitable housing, although she was clear that this prior proceeding did not involve drug abuse.

During his testimony, petitioner explained that he had been participating in long-term inpatient substance abuse for the preceding seven months and expected to graduate in March of 2021. According to petitioner, the first two months of his treatment involved a "blackout" period in which he was not permitted contact with people outside the facility. Petitioner also addressed his absence at the adjudicatory hearing, indicating that he lacked transportation from Huntington to the hearing. According to petitioner, miscommunication between him, his prior attorney, and

---

[2]R.S. is the father of children not at issue in this appeal.

the DHHR resulted in his absence. Petitioner also indicated that he recently accepted a job that paid $13 per hour and that he would be working forty hours per week. With that money, petitioner explained that he would be able to obtain a suitable residence shortly after his completion of substance abuse treatment.

However, the circuit court found that petitioner had no bond with the child, having "been completely uninvolved in the child's life" for the preceding nine months. Despite finding at adjudication that the DHHR failed to establish that petitioner previously voluntarily relinquished his parental rights to older children, the court based termination of petitioner's right, in part, upon his prior voluntary relinquishment. The court found that the prior proceeding concerned lack of housing, lack of employment, and drug abuse, despite testimony from the DHHR that drug abuse was not at issue. The court found that these conditions persisted, as petitioner admitted that he could not provide the child with safe and suitable housing at the time of the dispositional hearing. Further, the court found that the child's need for permanency outweighed petitioner's uncertain future, that it was not in the child's best interest to delay permanency, and that the child's welfare required termination of petitioner's rights. Because it found that there was no reasonable likelihood that petitioner could substantially correct the conditions in the near future, the court terminated petitioner's parental and custodial rights to the child.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights instead of imposing a less-restrictive dispositional alternative. Upon our review, we agree with petitioner that termination of his rights was in error. In reaching this determination, it is necessary to first address the circuit court's adjudication of petitioner in order to address

---

[3]According to respondents, the mother is currently participating in an improvement period. The permanency plan is reunification with the mother upon successful completion of her improvement period, while the concurrent permanency plan is adoption in the current foster home.

certain errors at disposition. As set forth above, by virtue of the specific allegations in the DHHR's petition, the only issue for which petitioner was appropriately adjudicated was his child support arrearage. According to West Virginia Code § 49-4-601(b), "[t]he petition shall allege specific conduct including time and place, [and] how the conduct comes within the statutory definition of neglect or abuse with references to the statute." Again, the only allegations against petitioner in the DHHR's petition were that he owed child support and that he voluntarily relinquished his parental rights to older children. As such, the circuit court's more detailed adjudicatory findings, including that petitioner "played very little part in the life" of the child and lacked safe and suitable housing, are ultimately irrelevant. Instead, it is the circuit court's findings that petitioner lacked employment or other means to provide for the child that form the entirety of the circuit court's adjudication.

It is also important to stress that, at adjudication, the circuit court explicitly found that the DHHR failed to prove the only other allegation against petitioner—that he previously involuntarily relinquished his parental rights to older children. Despite this finding, the circuit court ultimately relied on the prior relinquishment in terminating petitioner's parental and custodial rights without reopening adjudication. By finding that the DHHR failed to meet its evidentiary burden on this allegation at adjudication but then relying on the prior termination at disposition, the court violated petitioner's right to due process. As we have explained,

> [t]he purpose of requiring specific allegations is to afford the charged parent with notice of why the termination proceeding is being conducted and to afford him an opportunity to address the charge. *See In re: Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Such a procedure is, in effect, required to guarantee that the parent will not be deprived of his custodial rights without due process of law as is required by *Stanley v. Illinois*, [405 U.S. 645 (1972)], and *In re: Willis*, [157 W. Va. 225, 207 S.E.2d 129 (1973)].

*In re Samantha M.*, 205 W. Va. 383, 389, 518 S.E.2d 387, 393 (1999). At adjudication, petitioner was essentially informed that he did not need to address the charge of a prior termination or defend against it at disposition. If the DHHR presented new evidence at disposition in support of its allegation that petitioner's rights were previously terminated in order to establish allegations from the petition, then the circuit court should have reopened the adjudicatory hearing and continued disposition so that petitioner would be prepared to defend against the new evidence and its potential impact on disposition.

Further, the court appeared to apply the law regarding prior *involuntary* terminations of parental rights to the *voluntary* termination of petitioner's rights to older children. We have previously held as follows:

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998) [now West Virginia Code §§ 49-4-601 through 49-4-610]. Although the requirement that such a petition

4

be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) [now West Virginia Code § 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (citation omitted). While a prior involuntary termination of parental rights may be relevant to new abuse and neglect proceedings, voluntary termination does not constitute a situation in which the DHHR is required to file a petition seeking termination of parental rights or one in which the DHHR is absolved of its statutory duty to attempt reunification of the family. *See* W. Va. Code §§ 49-4-605(a)(3) and 49-4-604(c). Further, voluntary terminations also do not lower the evidentiary threshold for termination of parental rights to other children, in accordance with *Kyiah P.* above. Most importantly, however, is the fact that even when involuntary terminations are at issue, there is still a requirement that it be proven that the parent has not remedied the conditions that led to the prior termination. In these proceedings, it is clear that none of the parties or the circuit court clearly established the basis for the prior termination, as the DHHR failed to meet its evidentiary burden at adjudication, the guardian asserted in her report that the conditions had not been corrected despite admitting that she did not know what the prior conditions were, and the circuit court found that the prior conditions included drug abuse despite a DHHR worker testifying that drug abuse was not at issue in the prior proceeding. As such, these various errors, and the circuit court's misapplication of the law regarding prior *involuntary* terminations to a case involving a *voluntary* termination, resulted in disposition being erroneous.

Having established that the only appropriate basis for the court's adjudication of petitioner was his failure to pay his child support obligations, we now turn to disposition. In terminating petitioner's parental and custodial rights, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Upon our review of the record, it is clear that there was no evidence upon which the court could have based this finding. Indeed, the undisputed evidence shows that only two months after the petition was filed, petitioner lowered his outstanding child support obligation from $1,378.34 to $487.23. Further, petitioner also testified to his recent employment, a fact corroborated by personnel at his substance abuse treatment program and the DHHR. In short, petitioner made significant progress in eliminating his child support debt and testified to his ability to totally correct this situation within a short period. Importantly, the circuit court terminated petitioner's parental and custodial rights only three months after the proceedings were initiated, well before any applicable timeframes for such proceedings had expired. *See* W. Va. Code § 49-4-610(9) (Precluding any "combination of any improvement periods or extensions thereto . . . caus[ing] a child to be in foster care more than fifteen months of the most recent twenty-two months"). Instead of terminating petitioner's rights, the court should have granted petitioner a post-adjudicatory improvement period in order to determine if he would be capable of satisfying the entirety of his child support obligation in the near future.

5

We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Based on the foregoing, we find that the rules and statutes governing abuse and neglect proceedings were disregarded or frustrated such that the circuit court's order must be vacated, in part, and the matter remanded with directions for petitioner to be granted a post-adjudicatory improvement period and supervised visitation with the child under terms and conditions recommended by the multidisciplinary team. Further, we caution that any subsequent disposition in this matter cannot be predicated on any factors for which petitioner was not appropriately adjudicated without reopening the adjudicatory hearing and granting petitioner the opportunity to defend against those allegations.[4]

For the foregoing reasons, we vacate, in part,[5] the circuit court's February 3, 2021, order terminating petitioner's parental and custodial rights and remand this matter for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated, in part, and remanded with direction.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[4]The Court recognizes that although petitioner was not appropriately adjudicated for his lack of appropriate housing, he nonetheless admitted at the dispositional hearing that he could not provide the same for the child at that time. Nothing in this decision should be construed as requiring the circuit court to return custody of the child to petitioner if the same would be unsafe or against the child's best interests. However, if lack of housing is a continuing issue, despite petitioner's testimony that he could obtain the same within a short period, then the DHHR should be required to provide reunification services in an effort to help petitioner correct this condition prior to the termination of his rights, if such termination proves necessary.

[5]The order on appeal also contains rulings regarding the father of children not at issue in this appeal. This memorandum decision vacates the circuit court's February 3, 2021, order as it relates to petitioner only and does not affect the rights of any other parties named in that order.