**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.F.**

**No. 21-0576** (Wood County 19-JA-243)

# MEMORANDUM DECISION

Petitioner Mother J.S., by counsel Debra L. Steed, appeals the Circuit Court of Wood County's June 22, 2021, order terminating her parental rights to J.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Keith White ("guardian"), filed a response on behalf of the child in support of the circuit court's order. Intervenor Foster Parents B.B. and M.B., by counsel Michael D. Farnsworth, filed a response also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she was compliant with the terms and conditions of her improvement period and without imposing a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed an abuse and neglect petition against petitioner alleging that she gave birth to J.F. after her parental rights to other children had been previously involuntarily terminated in 2013 and 2015. According to the DHHR, petitioner admitted to using marijuana during her pregnancy with J.F. and explained that the father was currently incarcerated. According to a worker, petitioner blamed an ex-boyfriend for her prior terminations. The DHHR concluded that petitioner had not had a change in circumstances and filed the instant petition. Thereafter, petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in February of 2020, and petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusive and neglectful parent, and granted her a post-adjudicatory improvement period. The terms of petitioner's improvement period required her to attend supervised visits, submit to drug screens, participate in parenting education and adult life skills classes, obtain suitable and stable housing and employment, attend narcotics/alcoholics anonymous meetings, maintain sobriety from drugs and alcohol, stay in touch with the DHHR workers and providers, and attend all hearings and multidisciplinary team meetings.[2]

In September of 2020, the court held a review hearing on petitioner's progress wherein the parties agreed to begin reunification with petitioner and J.F. In turn, the court extended her post-adjudicatory improvement period. However, on September 15, 2020, a few hours after petitioner exercised her first unsupervised home visit with the child, she engaged in domestic violence with the father. As a result, the DHHR filed an amended petition on September 25, 2020, alleging that law enforcement officers reported finding both petitioner and the father with bloodied faces and obvious injuries. The officers noted that petitioner's breath smelled of alcohol and that she claimed the father hit himself. The father told police that petitioner "drinks a lot" and had been drinking that day when the couple had an argument at dinner. The father reported that petitioner threw his plate of food on the floor and he poured petitioner's beer over her. The father stated that petitioner repeatedly hit him on the head, and he bit her arm in self-defense. After interviewing petitioner and observing the crime scene, officers determined that petitioner was the primary aggressor and arrested her. Thereafter, the father requested that the domestic battery charge be dismissed due to the ongoing child abuse and neglect matter. He also failed to prosecute the domestic violence petition he filed against petitioner. The father reconciled with petitioner, and the couple continued living together. The DHHR concluded that petitioner engaged in domestic violence with the father and that the father failed to protect the child by requesting the criminal charges against petitioner be dismissed.

In February of 2021, the circuit court held a combined adjudicatory and dispositional hearing, wherein petitioner stipulated to engaging in domestic violence with the father. Thereafter, the court accepted the stipulation, adjudicated petitioner as an abusing parent on the new allegation and granted her a post-dispositional improvement period against the request of the DHHR. At a review hearing held in May of 2021, the DHHR reported that petitioner was pregnant and was overall compliant with the terms of her improvement period. The circuit court ordered that services for petitioner continue but noted that the statutory time limits contained in West Virginia Code § 49-4-605(a)(1) had been surpassed.[3]

---

[2]The father was released from incarceration in June of 2020 and moved in with petitioner.

[3]The DHHR is required to seek termination when a child

has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home.

(continued . . .)

On May 21, 2021, providers visited petitioner's home where they found twenty-eight large aquariums filled with fish and many were without lids. The workers found a mother cat and four kittens with an unchanged litter box causing the home to smell of cat urine. There were also two dogs, two rabbits, a chameleon, and lots of flies and bugs in the home. The worker noted that the rabbits had their own room, but there was no bedroom free of animals designated for the children. A ceiling was also noted to be caving in, and when asked why it was not repaired, petitioner replied that it was too expensive. When asked about the costs for all of the animals' food, petitioner answered twelve dollars a month for fish food and did not address the other animals. Petitioner was defensive when workers asked her to address these concerns and refused to change anything without the court ordering it. Due to the foul odor and other issues, the providers moved visits with the children back to their headquarters.

The circuit court held a final dispositional hearing in June of 2021. The court heard argument that J.F. had been in the foster parents' care for nearly seventeen months and that there were no compelling circumstances to extend petitioner's improvement period beyond the statutory time limits. Petitioner argued that her pregnancy was a compelling circumstance to extend the statutory time limits, but the court disagreed, finding that petitioner's pregnancy was a choice she made while knowing she had a pending child abuse and neglect action and that her parental rights to four other children had been previously involuntarily terminated. As such, the court found that there were no compelling circumstances to extend petitioner's improvement period beyond the statutory time frame. The circuit court concluded that although petitioner had "given the appearance of being compliant with her services," she had "failed to internalize what those services intended to achieve." The court noted that "the test is not whether a parent is attending appointments and classes but whether the parent has changed his/her behavior to make them an appropriate parent to have the children safely returned." The court also noted that petitioner's home was unfit and that visitations were stopped due to the home's poor conditions. Finally, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was in the child's best interest. It is from the June 22, 2021, dispositional order that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when,

---

W. Va. Code § 49-4-605(a)(1).

[4]The father's parental rights were terminated below. The permanency plan for the child is adoption by his foster family.

although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she was substantially compliant with the terms and conditions of her improvement period and had been granted the opportunity to continue in her improvement period following the domestic violence incident with the father. Petitioner contends that the court erred in finding that she failed to change negative behaviors as she exhibited nine months of positive changes. According to petitioner, she consistently exercised appropriate visits with J.F., passed all drug screens, was participating in counseling with a focus on relationships, and attending adult life skills classes. Had she been able to continue in her improvement period with these services, she argues, she could have succeeded in reunifying with the child

Petitioner correctly cites that no "rule is more firmly established than that the right of a natural parent to the custody of . . . her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions." Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). However, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 82, 479 S.E.2d 589, 592 (1996). Most importantly, petitioner's argument wholly disregards that she exhausted the statutory timeframes for child abuse and neglect matters.

Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

W. Va. Code § 49-4-610(9). According to the record, the court below granted petitioner a post-adjudicatory improvement period, an extension to that improvement period, and a post-dispositional improvement period. By the dispositional hearing, J.F. had been in the care of the intervening foster parents for nearly seventeen months. Therefore, the child's placement in foster care exceeded fifteen months and his permanency was delayed beyond the statutory limits. Further, the court specifically found that no compelling circumstances existed to justify the extension of petitioner's improvement period beyond fifteen months and petitioner does not argue on appeal that such circumstances existed.

4

Regarding improvement periods, this Court has noted that "[i]mprovement periods are . . . regulated, both in their allowance and in their duration, by the West Virginia Legislature, which has assumed the responsibility of implementing guidelines for child abuse and neglect proceedings generally." *In re Emily*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000). We have noted that the requirements set forth in West Virginia Code § 49-4-610

> are not mere guidelines. . . . The time limitations and standards contained therein are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority. Discretion granted to the circuit court within this framework is intended to allow the court to fashion appropriate measures and remedies to highly complex familial and inter-personal issues—it does not serve as a blanket of immunity for the circuit court to manage abuse and neglect cases as its whim, personal desire, or docket may fancy.

*In re J.G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018). "Critically, '[a] parent's rights are necessarily limited . . . [as to improvement periods] because the pre-eminent concern in abuse and neglect proceedings is the best interest of the child subject thereto.'" *Id.* (citation omitted). Finally,

> the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). While petitioner argues that she should have been given more time, our case law makes it abundantly clear that a parent's opportunity to continue to participate in an improvement period is not upheld to the detriment of the children. Accordingly, we find no error in this regard.

We likewise find no error in the termination of petitioner's parental rights without imposing a less-restrictive dispositional alternative. We have previously held as follows:

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ [49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § [49-4-605(a)] is present.

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (citation omitted). As petitioner's parental rights to four older children had been previously terminated in 2013 and 2015, the evidentiary threshold necessary for termination was reduced, and the evidence presented at the final dispositional hearing supported termination. On appeal, petitioner simply asserts that the circuit court should have implemented a less-restrictive dispositional alternative. However, the evidence below supports a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future as petitioner failed to address her issues of domestic violence after nearly eighteen months of services and failed to show that she could make lasting changes. Furthermore, the circuit court found that petitioner's home was unfit for the return of the child.

We also find that termination of petitioner's parental rights was necessary for the child's welfare as J.F. had lived with the intervening foster parents for the entirety of his short life and deserved permanency and stability. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights based upon these findings. Further, this court has held the following:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Petitioner argues that the circuit court failed to consider a less-restrictive alternative disposition to the termination of her parental rights, but this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the record supports the finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, we find that a less-restrictive dispositional alternative was not warranted. Accordingly, we find no error in the circuit court terminating petitioner's parental rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 22, 2021, order is hereby affirmed.

6

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton